## Case No. 15,001.

### UNITED STATES v. DULUTH et al.

[1 Dill. 469 [2] 10 Am. Law Reg. (N. S.) 449.]

Circuit Court, D. Minnesota. 1871.

NAVIGABLE WATERS — POWERS OF NATIONAL AND STATE GOVERNMENTS OVER—INJUNCTION.

1. The United States may bring an injunction bill, in the proper circuit court, to protect improvements, which she is making under the authority of congress, in navigable waters, from injury which will be caused by works of internal improvement within state limits, and by state authority. The power of the federal government, when called into exercise, is, in such cases, not only paramount but exclusive, and cannot lawfully be interfered with to any extent.

[Distinguished in U. S. v. Beef Slough Manuf'g, etc., Co., Case No. 14,559. Cited in Louisiana State Lottery Co. v. Fitzpatrick, Id. 8,541; U. S. v. Mississippi, etc., Boom Co., 3 Fed. 552.]

2. Whether the work prosecuted under state authority will have the effect to interfere with that prosecuted under the federal authority, is a question of fact upon which the opinions of the government engineers, while entitled to great consideration, are not conclusive.

3. Where the injury threatened is of a character not easily remedied, if the injunction be refused, and there is no denial that the act charged is contemplated, a temporary injunction should be granted, unless the case made by the bill is satisfactorily refuted.

[Cited in Wilkinson v. Tilden, 9 Fed. 684; Lee v. Simpson, 37 Fed. 15.]
[Cited in Pioneer Wood-Pulp Co. v. Bensley, 70 Wis. 482, 36 N. W. 321.]

The United States, by her attorney for the district of Minnesota, who acts under the direction of the attorney general, brings this

---

[1] [Reported by Hon. William Cranch, Chief Judge.]
[2] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

bill in chancery in the circuit court for that district, for an injunction against the defendants. The facts stated in the bill are briefly these: That the government of the United States, by means of appropriations made by congress, is making certain improvements at the mouth of the St. Louis river, intended to keep open and to deepen the channel at that point, between the western end of Lake Superior and the body of water called Superior Bay. This bay is separated from the main body of the lake by a narrow tongue of land, a few hundred yards in width, starting from the Minnesota shore on the north, and projecting itself south toward the Wisconsin shore about six miles. Between the southern extremity of this narrow strip of land, called Minnesota Point, and the Wisconsin shore of the lake, the St. Louis river and the waters of Superior Bay make an outlet into Lake Superior, and through the outlet or channel (for the St. Louis river here makes a current), vessels navigating the lakes, make their way to the harbor of Superior city, Wisconsin, and to the inner harbor of the city of Duluth. This latter city is situated in the state of Minnesota, at the upper end of Minnesota Point, and has not only its harbor in Superior Bay, but has its wharf on the lake, where vessels receive and discharge their cargoes. The improvements on which the United States have been at work for two or three years, are at the mouth of the St. Louis river, between the south end of Minnesota Point and the Wisconsin shore, and, as the bill alleges, are intended to narrow the channel at that point, by piers on each side of it, that the body of water carried by the St. Louis river and the Bay of Superior, through the channel, may be increased in velocity so as to deepen the channel and keep it free from the deposits which have a tendency to fill it up, and thus obstruct the entrance and exit of vessels into and from Superior Bay. The bill then alleges that the defendants are engaged in cutting a canal across the upper end of Minnesota Point, near Duluth, through which the waters of Superior Bay will flow into Lake Superior, and by which the current of the St. Louis river, now flowing through the outlet already described, will be diverted into the canal, and that the result will be to render ineffectual the efforts of the United States to protect and deepen the natural channel at the mouth of the St. Louis river, and to cause it to be filled up, so as to become incapable of navigation. To prevent this result, the court is asked to enjoin the defendants from the further prosecution of work on the canal.

Mr. Davis, U. S. Dist. Atty., for Minnesota, with whom was Mr. Barlow, Atty. Gen., of Wisconsin, and Mr. Spooner, for the United States.

Mr. Cornell, Atty. Gen., for Minnesota, and Mr. Masterson, for the city of Duluth.

MILLER, Circuit Justice. While the defendants do not deny the right of the United States to come as a party plaintiff into her own courts, to seek protection for her own interests, they claim that the real plaintiffs in this suit are the state of Wisconsin and the city of Superior, while the United States are mere nominal parties, and that the proceeding is instigated by rivalry and jealousy, and has for its purpose the injury of Duluth by impeding the growth of her commerce, by checking the improvement of her harbor, to which the canal is essential.

Of all this the court can know nothing, judicially. The present suit was authorized by the proper officer of the government, namely: the attorney general, and, in doing so, he appears to have acted on the request of the engineering bureau having in charge the work threatened with injury. This injury, if the allegations of the bill be true, is a direct interference by the defendants, with the operations of the federal government in the improvement of the navigation of the lake at that point.

We cannot assume that the government of the United States, or its officers who bring this suit, are governed by a spirit of hostility to Duluth, nor can we make that the subject of inquiry on this occasion.

If the allegations of the bill be true, we have no doubt of the right of the officers of the federal government to bring this suit in the name of the United States, to protect her rights, and deem it a much more appropriate mode of doing so than by the physical force of the war department.

That the protection, improvement, and general control of the navigable waters of the United States are within the constitutional competency of congress, there can be no doubt. This power has been so often asserted, both in congress and in the supreme court, that reference to adjudged cases would be an affectation of learning. No one has denied this for many years past, and it is not denied by counsel on the present occasion.

It is, however, asserted that the states have a concurrent right to authorize improvements on the navigable waters of the United States in which their citizens are interested, so far as these waters lie within their territorial limits; and it is shown by affidavits, and by the statutes of Minnesota, that the canal here complained of is authorized by said state, and is important to her commerce, and is within her territory. That such a power can be exercised by the states may be admitted, when it does not injure the general interest of commerce, and when it does not conflict with any control assumed by the federal government over the same locality.

But all the reported cases which concede this power in the states agree that it exists only while the congress of the United States refrains from the assertion of its authority, and that, when the latter is called into exercise, it is not only paramount, but exclusive. Such is the principle asserted by the supreme court in Crandall v. Nevada, 6 Wall. [73 U. S.] 35, and in Gilman v. Philadelphia, 3 Wall. [70 U. S.] 713, and in Cooley v. Board of Wardens, 12 How. [53 U. S.] 299, in all of which the question is thoroughly examined.

Nor can any doubts be entertained, from the facts before us, that the congress of the United States has called into exercise the federal power in the improvement of the navigation between Lake Superior and Superior Bay. They have made appropriations for this purpose more than once, one of which is so recent as the month of March last, which is yet unexpended, and the mode of expending this money, being confided by congress to certain officers of the government, it must be held that whatever is done by them in furtherance of that purpose, is done under the authority of congress. It is, however, claimed that inasmuch as congress, in the same bill which contains the last appropriation referred to, also appropriated a like sum for the improvement of the harbor of Duluth, it is to be inferred that congress thereby recognized the canal now complained of as a legitimate work.

In support of this view, reference is made to a joint resolution of the Minnesota legislature, in response to which it is claimed this latter appropriation was made. But we can draw no such inference from the action of congress; for, while that joint resolution does mention this canal, with other matters, as one mode of improving the Duluth harbor, and declares that the system under which congress was seeking to improve the entrance to Superior Bay (which was supposed to be as useful to Duluth as to Superior city) is a failure, it does not appear that congress adopted these views, for it left both appropriations under the control of the engineer corps of the war department, which, both then and now, continue to assert that the work at the mouth of St. Louis river is the true mode of improving the entrance to Superior Bay, in which are the harbors of Superior city and of Duluth. We must hold, then, that this work is authorized by the congress of the United States, and is prosecuted under their authority, and that the canal is not.

The remaining question to be considered is, whether the allegation of the bill, that this canal will seriously interfere with that work, is sustained by the evidence before us.

In this aspect of the case it is to be understood that although no answer to the bill is filed, we have admitted counter affidavits.

The complainant supports the bill by the reports of the engineer bureau, and by the affidavits of the officers of that corps engaged on the work, and by those of other civil engineers.

The defendants have a large number of

affidavits showing that no such effect on that work will follow the opening of the canal, as is alleged in the bill.

It is urged by counsel for complainant that the reports of the engineers and their statements, made as is claimed on accurate surveys, should be held conclusive. But while we concede that their action in determining the best mode of improving the entrance to the bay cannot be questioned here, we cannot give such effect to their opinions on the question of the influence of the canal on that improvement, though we concede to their opinion the value which their station and character merit.

The affidavits on both sides are numerous. They demonstrate what all courts and juries have so often felt, that where the question is one of opinion and not of fact, though that opinion should be founded on scientific principles or professional skill, the inquiry is painfully unsatisfactory, and the answers strangely contradictory.

In this emergency I am relieved by a principle which has generally governed me, and which, I believe, governs nearly all judges, in applications for preliminary injunctions. It is that, when the danger or injury threatened is of a character which cannot be easily remedied if the injunction is refused, and there is no denial that the act charged is contemplated, the temporary injunction should be granted, unless the case made by the bill is satisfactorily refuted by the defendant. In this case I am not satisfied that it is so refuted. I am inclined, personally, to believe that the effect of opening the canal without the breakwater, or some other protection to the natural action of the flow of water through it, will tend to fill up the channel at the mouth of the river.

It is said in answer to this, that no irreparable damage can ensue from making the canal, and that more injury will result to defendants from stopping the work, than can arise from its completion. But I do not agree that the damage, if there shall be any from the canal, can be repaired without immense difficulty, and probably, not at all. While the canal might be closed with great expense, the deposits which may have accumulated at the mouth of the river, before the question is settled, may never be removed, or the removal may be too costly to justify the attempt. And, in a case of interference with the authority of the federal government, the court cannot consider the relative amount of injury to accrue to the party thus interfering, and to the government. Such a principle would tend to encourage interference with federal authority, when it ought to be repressed.

On the other hand, if, on the final hearing, it shall be made to appear that complainants are mistaken, the injunction can be dissolved, and the work completed. And the truth in the matter can, in the meantime, be ascertained by accurate surveys, and calculations impartially made, either by officers of the government, or by competent engineers appointed by the court, or by depositions subject to cross-examination, so that when the court comes to decide, it will have the subject within its control, and will have something more than ex parte affidavits, some of which are, by no means, clear or precise in their statements. Or if, before the final hearing, it shall be made to appear in the manner indicated, or in any other manner satisfactory to the court, that the canal can be protected by a breakwater, so as to prevent the too rapid diversion of water from the bay, or can, in any other manner, be completed without injury to the government works, and the complainants put their work in that condition, the injunction may be modified or dissolved.

In conclusion, I take the liberty of saying that, since congress has taken this matter in hand by appropriating money for the improvement of these harbors, it should cause the adoption of some comprehensive plan for the improvement of both harbors, and not leave it to the conflicting interest of the two cities, or to the adverse action of the state and federal authorities.

Nor can I doubt, if the defendants here should ask of the department in charge of these improvements, a careful inquiry into the plan which they believe essential to their interests, that some mode of prosecuting such improvement would be found which would meet the approval of that department, and obviate the necessity of a final decision by this court.

I am happy in the assistance of Judge DILLON, of this circuit, on the hearing of this application, and in his concurrence in these views.

An injunction according to the prayer, will be allowed. Ordered accordingly.

NOTE. At the June term, 1871, by consent of the war department, and of the attorney general, the injunction was dissolved on the filing of a bond by the city of Duluth, in the sum of $100,000, conditioned that the city should complete and maintain a dyke across the Bay of Superior, from Minnesota Point to Rice's Point, by the first day of December, 1871, and complete the canal according to plans to be approved by the chief of engineers or the war department. The bond was filed, the injunction dissolved, and further proceedings in the suit stayed.

United States may bring injunction bill to defend its rights in state limits—Cited, U. S. v. Beef Slough Manuf'g Co. [Case No. 14,559; U. S. v. Mississippi & R. R. Boom Co., 3 Fed. 552; Wilkinson v. Tilden, 9 Fed. 684; Louisiana State Lottery Co. v. Fitzpatrick [Case No. 8,541].