[L. A. No. 1676.   Department One.—February 27, 1907.]

# CHESTER WILLIAMS, Appellant, v. LOS ANGELES RAILWAY COMPANY, Respondent.

LOT FRONTING ON STREET—PRIVATE EASEMENTS AS APPURTENANCES.— Every lot fronting upon a street has as appurtenances thereto certain private easements in the street in front of and adjacent to the lot, which are part of the lot, and are private property as fully as the lot itself, though exercised in the street and extending into and over the street.

ID.—NATURE OF PRIVATE EASEMENTS.—The private easements appurtenant to the lot are: First, the right of ingress and egress to and from the lot over and by means of the street; second, the right to receive light from the space occupied by the street, and to the circulation of air therefrom; and, third, the right to have the street space kept open so that signs or goods displayed in and upon the lot may be seen by the passersby, in order that they may be attracted as customers.

ID.—OBSTRUCTION TO USE OF STREET—PRIVATE INJURY TO OWNER OF LOT—DAMAGES—INJUNCTION.—Any obstruction to the use of the street, which impairs or destroys the private easements appurtenant to an abutting lot, is a private injury to the owner of the lot, different and distinct from the injury to the general public; and the owner may maintain an action for damages for the injury, or for an injunction to prevent its continuance, regardless of the fact that the same obstruction also constitutes an injury to the public right of travel, and regardless of the number of persons who may suffer a similar injury to private easements appurtenant to other lots fronting on the street.

ID.—ERECTION OF SWITCH-TOWER IN STREET—FRANCHISE FOR ELECTRIC RAILWAY—POWER OF CITY AUTHORITIES.—The erection of a switch-tower on the street in front of plaintiff's lot, which is an obstruction to some extent to the exercise of the private easements of plaintiff, is not included in the granting of a franchise to lay tracks in the streets, and to run cars thereon by electricity, if it can be placed on private property, at whatever cost, and can there be used in substantially the same manner, and, if so, the city authorities cannot give the right to put it in the street, to the detriment of the private rights of the plaintiff, without first making compensation to him for the damage caused thereby, if any.

ID.—EXTENT OF DAMAGE—INJUNCTION PENDENTE LITE—GRANTING OR REFUSAL IN DISCRETION OF COURT.—The question as to the extent or slightness of the damage caused by the obstruction, or whether it ought to justify an injunction *pendente lite,* was a matter for the determination of the trial court; and the question of granting or re-

fusing an application for a temporary injunction was addressed to the discretion of the lower court, and its action in refusing it will not be disturbed on appeal, where there appears to be no clear abuse of discretion.

ID.—QUESTION FOR FINAL HEARING.—If the damage or injury threatened is of a character which may be easily remedied, if the injunction is refused, as where it is chiefly monetary damage, and the defendant is solvent, the court, in its discretion, may refuse to issue a temporary injunction, leaving the question for the final hearing, at which the court could allow compensation in the action, under the prayer for general relief, and could in the final judgment restrain the use of the tower, or command its removal, unless the damage was paid within a time fixed.

APPEAL from an order of the Superior Court of Los Angeles County refusing to grant an injunction *pendente lite.* M. T. Allen, Judge.

The facts are stated in the opinion of the court.

Works, Lee & Works, for Appellant.

Bicknell, Gibson, Trask, Dunn & Crutcher, for Respondent.

SHAW, J.—This is an appeal from an order refusing an application for an injunction pending the action.

The plaintiff was the owner of a lot and of the building thereon situated on the corner of Spring and Fourth streets, which is about the business center of the city of Los Angeles. The building was used for a retail curio store, and among its advantages were those arising from its position on the street, consisting of the facilities thereby afforded for the display of signs advertising the business, its accessibility, and the free admission of light and air. The defendant was operating a system of electric street railways passing along both of the streets and turning each corner of the intersection. It had previously kept a man employed to turn the switches and signal the men operating the cars at the proper time to cross the intersection or turn the corner into the other street. For the purpose of facilitating this work, the defendant erected a large iron post, or pedestal, twelve inches in diameter and about ten feet high, and placed thereon a switch-tower four feet two inches wide and over nine feet high above the top of the post. The post was situated on the sidewalk of Spring

CL Cal.—38

Street some two or three feet north of the north line of Fourth Street and about nine feet from the walls and windows of the plaintiff's building. This tower was to be used as a signal station, and in it was to be stationed a man who, by means of electric wires extending from the tower to the switches, was to turn the switches, and by semaphore signals was to direct the running of the cars, as was formerly done by the switchman on the street. At the time the complaint was sworn to the tower had not been placed on the post, but before the preliminary restraining order was served it had been so placed, though not entirely completed ready for operation.

Every lot fronting upon a street has, as appurtenances thereto, certain private easements in the street, in front of and adjacent to the lot, which easements are a part of the lot, and are private property as fully as the lot itself, though exercised in the street and extending into and over the street. Any obstruction to the use of the street which impairs or destroys these easements is a private injury, special and peculiar to the owner of the lot, and different and distinct from the injury to the general public and from that which such owner suffers as a part of the general public. As one of the public he has the right to travel from place to place on the street, in front of his lot or elsewhere. Any injury to this public right gives him no right to maintain an action for damages, or for an injunction. As an abutting owner, he has the right to the private easements in question, and for an injury thereto he may sue for damages or to enjoin the continuance of the injury, regardless of the fact that the same obstruction also constitutes an injury to his public right of travel, and regardless of the number of persons who may suffer a similar injury to similar private easements appurtenant to other lots fronting on the street.

These private easements are,—1. The right of ingress and egress to and from the lot over and by means of the adjacent portion of the street (*Eachus* v. *Los Angeles Ry. Co.*, 103 Cal. 617, [42 Am. St. Rep. 149, 37 Pac. 750]; *Bigelow* v. *Ballerino*, 111 Cal. 563, [44 Pac. 307]; *Geurkink* v. *Petaluma*, 112 Cal. 308, [44 Pac. 570]; *Symons* v. *San Francisco*, 115 Cal. 557, [42 Pac. 913, 47 Pac. 453]; *Sievers* v. *San Francisco*, 115 Cal. 653, [56 Am. St. Rep. 153, 47 Pac. 687]; *Bancroft* v. *San Diego*, 120 Cal. 437, [52 Pac. 712]; *Eachus*

v. *Los Angeles,* 130 Cal. 495, [80 Am. St. Rep. 147, 62 Pac. 829]); 2. The right to receive light from the space occupied by the street, and to the circulation of air therefrom (*Brown* v. *Board,* 124 Cal. 280, [57 Pac. 82]; *Townsend* v. *Epstein,* 93 Md. 537, [86 Am. St. Rep. 441, 49 Atl. 631]; *Field* v. *Barling,* 149 Ill. 556, [41 Am. St. Rep. 311, 37 N. E. 850]; *Shepard* v. *Manhattan Ry. Co.,* 117 N. Y. 442, [23 N. E. 31]; *Story* v. *New York etc. R. R. Co.,* 90 N. Y. 122, [43 Am. Rep. 146]; *Lohr* v. *Metropolitan El. R. R. Co.,* 104 N. Y. 268, [10 N. E. 531]; 2 Dillon on Municipal Corporations, 4th ed., sec. 712); and 3. The right to have the street space kept open so that signs or goods displayed in and upon the lot may be seen by the passersby, in order that they may be attracted as customers to patronize the business carried on thereon. (*First Nat. Bank* v. *Tyson,* 133 Ala. 459, [91 Am. St. Rep. 46, 32 South. 144]; *Dill* v. *Board,* 47 N. J. Eq. 421, [20 Atl. 743]; *Hallock* v. *Scheyer,* 33 Hun, 111.) The plaintiff, as the owner of the lot abutting on the street, was possessed of these private easements. The structure erected by the defendant was, at the place where it was situated, to some extent an obstruction to the exercise of all of these easements. To the extent of the space occupied, it absolutely excluded all other use, either for passage, light, air, or view. Whether the damage and obstruction thereto was so slight as to come within the *de minimis* rule, or was sufficient to justify an injunction *pendente lite,* was a matter for the determination of the court below.

The allegations of the answer do not show that it was necessary to the operation of the street-cars that the tower should be placed in the street. They show, only, that it was necessary, if it was to be used at all, that it should be placed "at the intersection." But for all that appears it would have served its purpose as well if erected upon private property at the apex of either of the four corner lots at the intersection, and within the property line. The photographs of the place, included in the record, make it extremely probable that this is the case, if they do not absolutely demonstrate the fact. The granting of the franchise to lay tracks in the streets and run cars thereon by electricity did not carry the right to erect such a structure as this tower in the street,—at any rate, not unless it is shown that it cannot be made of practical

use if located on private property. We do not mean to say that, even if that were shown, the right would be included in the franchise. What we decide is, that if it can be placed on either of the four corners, on private property, and not in the space dedicated as a street and sidewalk, and can there be used substantially in the same manner, then the city authorities cannot give the right to put it in the street, to the detriment of the private rights of the plaintiff. The fact that it may cost a large sum to obtain the necessary private property at that point is immaterial. It is not at all clear from the facts stated in the answer whether the purport of it is that the use of the tower is essential to any operation of the car line, or only that it is much more convenient, economical, and efficient than the employment of one or more men in the street to perform the work of changing the switches. These are matters for the determination of the trial court upon the final trial, if it has not yet been had. The answer fails to show that its franchise or permit to erect this tower authorized it to place it at the point selected, to the injury of the plaintiff, without first making compensation to him for the damage caused thereby, if any.

Nevertheless, upon this appeal we cannot say that the refusal of a temporary injunction until the trial of the cause was erroneous. The question of granting or refusing an application for a temporary injunction is addressed to the sound discretion of the lower court, and its action will not be reversed upon appeal unless there appears to be an abuse of the discretion. If the damage or injury threatened is of a character which may be easily remedied if the injunction is refused, as where it is chiefly monetary damage and the defendant is solvent, the court, in its discretion, may refuse to issue an injunction, leaving the question to be decided upon the final hearing. (*Hicks* v. *Michael,* 15 Cal. 116; *Peterson* v. *Santa Rosa,* 119 Cal. 389, [51 Pac. 557]; *United States* v. *Duluth,* 1 Dill. 469, [25 Fed. Cas. 925, Fed. Cas. No. 15,001].) Where one or the other of the parties is to suffer by the granting or refusing of an injunction pending the action, the inconvenience likely to be incurred by each from the action of the court in granting or refusing a temporary injunction should be balanced, and the court should grant or withhold the injunction accordingly. (10 Ency. of Plead. & Prac. 989.)

From the facts stated it is probable that the court below believed that the actual damage to the plaintiff's private rights would be small. The tower is at least nine feet distant, and the post alone interferes with the right of ingress and egress, and that but slightly. It may be that the court below considered it doubtful that there would be any appreciable damage, or, at all events, as it is not claimed that the defendant is insolvent, that the full damages could be recovered in an action. (*Bigelow* v. *Los Angeles,* 86 Cal. 618, [24 Pac. 778]; *Reardon* v. *San Francisco,* 66 Cal. 506, [56 Am. Rep. 109, 6 Pac. 317]; *Tyler* v. *Tehama County,* 109 Cal. 624, [42 Pac. 240].) The court could allow it in this action, under the prayer for general relief, and could in the final judgment restrain the use of the tower or command its removal unless the damage was paid within a time fixed. The defendant would have the right to bring a condemnation suit, pay the damages assessed, and thereupon resume the use of the tower. At the time of the service of the restraining order the tower was in place, and it remained there at the hearing, substantially ready for use. We cannot say that it would have been unreasonable in the court below, in view of these circumstances, to have considered that the rights of the parties could be substantially preserved by reserving the matter of an injunction until the trial, in the mean time suffering the tower to remain and allowing defendant to operate its cars therewith. The abuse of discretion is not clear.

The order is affirmed.

Angellotti, J., and Sloss, J., concurred.