## SAUNDERS v. PHELPS CO.

1. PLEADING—GAMBLING—COTTON FUTURES.—To sustain an action under Rev. Stat. 1861, to recover money paid to an agent to be used by him in gambling in cotton futures, it is not necessary to allege loss.
2. IBID.—IBID.—PRINCIPAL AND AGENT.—THE COMPLAINT states a good cause of action at common law against an agent for converting to his own use his principal's money, even though delivered to him for an illegal purpose; also, that a principal may revoke the authority of an agent, and recover money given him for an illegal purpose, before the illegal contract is executed. Cases considered. MR. CHIEF JUSTICE McIVER dissents.

Before GARY, J., Sumter, March, 1898. Reversed.

Action by George M. Sanders v. The A. C. Phelps Company. From judgment sustaining demurrer, plaintiff appeals.

*Mr. A. B. Stuckey*, for appellant, cites: Rev. Stats., 1859, 1860, 1861, 1862, 1863; 50 S. C., 543; 51 S. C., 439.

*Messrs. Lee & Moise*, contra, cite: Rev. Stats., 1859, 1860, 1861; 4 John., 193; 18 S. C., 312; 40 S. C., 344; 3 Denio, 107; 13 Pa. St., 601; 4 McC., 211; 1 Strob., 85.

Sept. 16, 1898. The opinion of the Court was delivered by

MR. JUSTICE GARY. The action herein was brought upon the following complaint: "1. That the defendant is a corporation duly chartered under the laws of the State of South Carolina. 2. That on the 21st day of July, 1897, the plaintiff contracted with the defendant to make a sale for him of cotton for future delivery, to wit: in November, 1897, and to cover the loss that might be sustained in such sale, paid over to the defendant as a margin the sum of $150, and took its receipt for the same. That the said contract was made between the plaintiff and the defendant without intention on the part of either that the said cotton should be actually delivered in kind by the plaintiff, if received in kind by the defendant or the person to whom they might sell, and it was, in fact, no more nor less than an act of gambling in cotton futures. 3. That the defendant failed to carry out its contract with the plaintiff, and on demand has refused to repay him the said sum of $150, and has become liable to pay him the said sum, under the provision of section 1861 of the Revised Statutes, plaintiff having brought this action within three months from the payment to the defendant of the said sum." (Omitting the prayer.)

The defendant demurred to the complaint, on the ground that it does not state facts sufficient to constitute a cause of action, in that it does not allege that the plaintiff has paid to the defendant any sum or sums of money for and on account of a loss sustained by reason of the alleged contract;

and on the further ground that the plaintiff cannot recover the amount sued for because said transaction was void and illegal by the common law and by statute. The demurrer was sustained, and the plaintiff appealed.

Section 1859 of the Revised Statutes provides that all contracts for the future delivery of cotton, &c., shall be null and void unless it was the intention of the parties that there should be an actual delivery in kind. Section 1860 provides that, in all actions brought to enforce such contracts, or to collect any note or other evidence of indebtedness, &c., the burden of proof shall be on the plaintiff to show that an actual delivery in kind was intended. Section 1861 is as follows: "Sec. 1861. Any person or persons so contracting, bargaining or agreeing for the sale or transfer of any of the aforesaid commodities, in violation of the provisions of this article, who shall pay over to any person or persons any sum or sums of money for and on account of a loss sustained by reason of such contract, bargain or agreement, shall be at liberty, within three months next ensuing after such payment, to sue and recover the amount so lost and paid, or any part thereof, from the person or persons to whom he or they shall have paid the same, with costs of suit, by action, to be prosecuted in any court of competent jurisdiction; and the oath of the loser that he has actually paid over the money to the party against whom the action is brought shall be regarded as *prima facie* establishing the case against such party; *and any person who shall act as agent or middle man in the making or execution of any such contract, or who shall accept or receive and forward any moneys, drafts or bills of exchange in furtherance thereof, shall be held liable in an action by the party to recover the amount or value of the money so received, or the value of the draft or bill of exchange so accepted or forwarded.*" The allegations of the complaint show that the defendant was the *agent* of the plaintiff for the purpose of making the sale therein mentioned. Section 1861 may properly be divided into two

parts: *First,* that which refers to the parties to the contract for future delivery; and *second,* that which related to agents. and middlemen (which we have italicized). In this way alone can full force and effect be given to the entire section. The first part was amply sufficient to embrace agents and middlemen, and there would have been no necessity for the second part if it had not been intended that the provisions of the two parts should be regarded as separate and distinct. The italicized words, "any such contract," refer to section 1859, and not to the first part of section 1861. It was, therefore, not necessary for the plaintiff to have sustained a loss before his cause of action accrued. This construction is in harmony with the statute which was intended to break up the practice of gambling in cotton futures, which has caused so much ruin throughout the land.

But even if the complaint did not state facts sufficient to constitute a cause of action under the statute, it was not demurrable if it stated a cause of action at common law. This ruling is in harmony with the case of *Cartin* v. *R. R. Co.,* 43 S. C., 221, in which the Court says: "If two causes of action were set forth in the complaint, without being separately stated, the defendant, it is true, had the right to make a motion that the complaint be made more definite and certain; or if allegations were made which were unnecessary to sustain the cause of action stated in the complaint, to make a motion to strike out such allegations as irrelevant and as surplusage. Pom. R. & R. R., §§ 447, 451. If the defendant waived such objections by failing to make such motions, then the plaintiff had the right to the relief to which all the allegations showed he was entitled. The plaintiff, where the allegations of the complaint are appropriate to either of two causes of action, may be required, upon motion of the defendant, to make his election as to the cause of action upon which he will proceed to trial. *Westlake* v. *Farrow,* 34 S. C., 270; *Hammond* v. *Railroad Co., Id.,* 10; *Hellams* v. *Switzer,* 24 *Id.,* 39." Also with the case of *Connor* v. *Ash-*

*ley*, 49 S. C., 478, in which the Court uses this language: "A complaint is not demurrable when its allegations show that the plaintiff is entitled to some relief, although he is not entitled to the relief for which he prays." The allegations of the complaint, as we have said, are to the effect that the defendant was the *agent* of the plaintiff, and that it refused to comply with the requirements of its contract, or, after demand, to refund to the plaintiff his money which he had entrusted to it for the purpose of making the sale therein mentioned. In the case of *Bervard* v. *Taylor*, 18 L. R. A. (Or.), 858, which was an action against a stakeholder to recover money which had been deposited with him as a wager on a foot race; but before the race was run, a demand was made upon the stakeholder by the plaintiff for a return of the money which he had deposited with him. In that case the Court uses the following language: "The general rule is, that the law will not interfere in favor of either party *in pari delicto*, but will leave them in the condition in which they are found, from motives of public policy. There is no doubt, where money has been paid on an illegal contract, which has been executed, and both parties are *in pari delicto*, the courts will not compel a return of the money so paid. But the cases show that an important distinction has been made between executory and executed illegal contracts. While the contract is executory, the law will neither enforce it nor award damages; but if it is already executed, nothing paid or delivered can be recovered back. So that while the contract is executory, the party paying the money, or putting up the property, may rescind the contract and recover back his money. This arises out of a distinction between an action in affirmance of an illegal contract, and one in disaffirmance of it. In the former, such an action cannot be maintained, but in the latter an action may be maintained for money had and received. The reason is, that the plaintiff's claim is not to enforce, but to repudiate an illegal agreement. Whart. Cont., 354. In such case, there is a *locus panitentiæ*. The writing is not con-

summated, and the contract may be rescinded by either party. In *Edgar* v. *Fowler*, 3 East., 215, Lord Ellenborough said: 'In illegal transactions, the money has always been stopped while it is *in transitu* to the person entitled to receive it.' As Lord Justice Mellish said: 'To hold that the plaintiff is entitled to recover, does not carry out the illegal transaction, but the effect is to put everybody in the same situation as they were before the illegal transaction was determined upon, and before the parties took any steps. If money is paid or goods delivered for an illegal purpose, the person who has so paid the money or delivered the goods may recover them back before the illegal purpose is carried out; but if he waits till the illegal purpose is carried out, or if he seeks to enforce the illegal transaction, in neither can he maintain an action.'" The rule is thus stated in 8 Am. & Eng. Enc. of Law, page 1014: "Although it has been the policy of the law to leave parties to an illegal transaction where it found them, by refusing relief to either in respect thereof, it has, on the other hand, never regarded property or money employed therein or produced thereby, as common plunder, to be seized or retained by others in no way interested in such business. Consequently, although an agent has taken an active part in gambling transactions on behalf of his principal, if he has received money belonging to the principal, and accruing from such business, by way of profits upon dealings in differences, he cannot defend himself in a court of law against liability to account therefor, by showing such unlawful business, and his connection therewith as such agent." The following language from the case of *Norton* v. *Blinn*, 39 Ohio St., 145, is quoted with approval in the case of *Gist* v. *Telegraph Co.*, hereinafter mentioned, to wit: "It is contrary to public policy and good morals to permit employees, agents or servants to seize or retain the property of their principal, although it may be employed in illegal business, and under their control. No consideration of public policy can justify a lowering of the standard of moral honesty required of persons in

these relations." Mr. Chief Justice McIver thus states the principle in the case of *Gist* v. *Telegraph Co.*, 45 S. C., at page 372: "Indeed, the true theory in such cases is, that the illegal business out of which the money received by the agent arises, is no part of the cause of action, and is not necessarily connected therewith, the real cause of action being money had and received by the agent for the use of his principal. This is the principle upon which the cases of *Andersons* v. *Moncrieff,* 3 DeS. Eq., 125, and *Owen* v. *Davis,* 1 Bail., 315, cited in support of the decision of *Tate* v. *Pegues, supra,* rest; for, as said by O'Neall, J, in *Owen* v. *Davis:* 'One who receives money to the use of another on an illegal contract cannot retain it to his own use, on the ground of the illegality of the contract.'" In the case of *Tate* v. *Pegues,* 28 S. C., at p. 465, Mr. Justice McGowan, in behalf of the Court, said: "The defendant received the property of the plaintiff under an agreement to sell it for them, and he cannot now refuse to account to them, upon the allegation that there was a law in the State forbidding the sale, especially as he appropriated a portion of the property so received to his own use." In the case of *Andersons* v. *Moncrieff, supra,* the Court uses this language: "The suit is not brought to recover a cent out of the defendant's pocket of his own money; it is to make him pay money which he has received as the agent and for the use of the complainant. It would be monstrous that the defendant should be permitted to keep the money; and the decided cases following the principle of abstract justice show that where an illegal transaction has taken place, the agent who has received the money on the part of the principal, shall not shelter himself from the payment of it to his principal, under the pretense of the illegality of the original transaction." It will thus be seen from the foregoing authorities that the complaint stated a cause of action at common law, both on the ground that an agent has no right to convert to his own use the money of his principal, even though it was delivered to him for an illegal purpose, and on the ground that the

principal has the right to revoke the authority of an agent, and to recover from him money which has been placed in his hands for an illegal purpose, at any time before the power to effect the illegal contract has been executed. The Circuit Judge was, therefore, in error in sustaining the demurrer.

It is the judgment of this Court, that the order sustaining the demurrer be set aside, and the cases remanded for a new trial.

MR. JUSTICE JONES, *concurring.*   I concur on the ground that the complaint, under a liberal construction, contains allegations which tend to show a cause of action under the last clause of sec. 1861, which provides that "*any* person * * who shall accept or receive * * any moneys * * in furtherance thereof (*i. e.,* in furtherance of the making or execution of a contract for the future sale of cotton, &c., as are declared void under sec. 1859), shall be held liable in an action by the party to recover the amount or value of the moneys so received, &c."

MR. CHIEF JUSTICE MCIVER, *dissenting.*   The case is so fully and fairly stated in the opinion of Mr. Justice Gary that any restatement here would be wholly unnecessary. The question arises under a demurrer to the complaint upon the ground that the complaint does not state facts sufficient to constitute a cause of action. This action is, confessedly, brought for the recovery of money paid by plaintiff to defendant in pursuance of a contract which the plaintiff, in his complaint, shows was an illegal and void contract under our statute law, viz: "gambling in cotton futures;" and the plaintiff, in his complaint, expressly bases his right to recover upon section 1861 of the Revised Statutes. The first allegation in the complaint, after the formal allegation of defendant's corporate character, is, "that on the 21st day of July, 1897, the plaintiff contracted with the defendant to make a sale for him of cotton for future delivery, to wit: in November, 1897, and, to cover the loss that might be

sustained in such sale, paid over to the defendant, as a margin, the sum of $150, and took its receipts for the same." It will be observed that there is no allegation, either here or elsewhere in the complaint, that defendant made, or undertook to make, any sale of cotton for future delivery, to wit: in November, 1897; and no allegation of any loss sustained by plaintiff by reason of any such sale. It is obvious, therefore, that the complaint fails to state the facts necessary to constitute a cause of action under the first branch of section 1861 of the Revised Statutes; for it is there declared that any person contracting for the sale of certain commodities, to wit: cotton, &c., for future delivery, who shall pay to any person any sum of money "for and on account of a loss sustained by reason of such contract, bargain or agreement, shall be at liberty, within three months next ensuing after such payment, to sue and recover the amount so lost and paid," &c. Now, it is obvious that the complaint fails to state facts sufficient to constitute a cause of action under the first branch of section 1861, for there is no allegation that any contract for the sale of November cotton had been made, and no allegation that any loss had been sustained by reason of such contract. Indeed, at the time this action was commenced, I do not see how it would be possible to ascertain whether there would be any loss sustained by reason of a contract for future delivery in November, even if such a contract had been alleged, for the complaint bears date 20th of October, 1897, and it was admitted in open Court, upon the argument here, that the action was commenced on that day. It seems to me clear, therefore, that there was no error on the part of his Honor, Judge Ernest Gary, in holding that the complaint did not state facts sufficient to constitute a cause of action under the first branch of section 1861 of the Revised Statutes, under which the complaint was manifestly drawn.

It is said, however, that the complaint may be sustained under the second branch of sec. 1861 of the Revised Statutes. The second branch of the section, substantially, pro-

vides that any person who shall act as agent, "in the making or execution of any such contract" (by which I understand a contract for the future delivery of cotton), "or who shall accept or receive * * any money * * in furtherance thereof," shall be liable to an action for the recovery of the money so received. Here again there is an absence of the material allegations that the defendant, as agent of the plaintiff, made or executed any contract for the sale of cotton for future delivery; and, on the contrary, the allegation in the second paragraph of the complaint negatives the idea that the money sued for was paid to defendant in furtherance of the making or execution of any contract for the sale of cotton for future delivery which defendant agreed to make, but which is not alleged to have been made; for the allegation in that paragraph is that this money was paid "to cover the loss that *might be sustained* in such sale," which does not appear to have been ever made. It seems to me that it will be much more likely to effect the wise and beneficent purpose of the statute to hold *both* parties to the strictest compliance with the provisions of the statute; and when either party invokes the aid of the courts to obtain the privileges which may be accorded to him, he should be held to the strictest compliance with the conditions of the statutes which he invokes.

Neither do I think that this complaint can be sustained as stating a cause of action for money had and received at common law. In the first place, it is not framed in that aspect; and even if it were, it could not be sustained, under the case of *Mordecai* v. *Dawkins*, 9 Rich., 262, where it was held that a note given for money lent to game with is void, even in the hands of an innocent holder. In that case, O'Neall, J., in delivering the opinion of the Court, uses this strong language: "We have, therefore, concluded, on a full review, that it is better at once to say, that not only the security for the reimbursement of the money lent to play with is void, but also that the money itself cannot be recovered back." How much stronger is this case, where it appears

on the face of the complaint that one of the parties to a gambling contract is seeking to recover back money placed in the hands of another for the express purpose of carrying out such illegal and immoral contract.   The case of *Tate* v. *Pegues*, 28 S. C., 463, differs materially from this case, for there it did not appear that the plaintiff had any intention of violating the law.   They simply employed Pegues as their agent to sell fertilizers—a contract which, as said in that case, "was certainly not unlawful."   See, also, comments on that case in *Gist* v. *Telegraph Co.*, 45 S. C., at pp. 371–2.   See, also, the remarks of Ld. Mansfield, in *Holman* v. *Johnson*, 1 Cowp., 341, as well as the language of Dixon, C. J., in *Clemens* v. *Clemens*, 28 Wisc., 637 (9 Am. Rep., at p. 531); both quoted with approval in *Milhous* v. *Sally*, 43 S. C., at pp. 324–5, where the principle is laid down that "no Court will lend its aid to a man who founds his cause of an action upon an immoral or illegal act"—even though the result may be that an equally guilty party obtains an advantage thereby.   The Court simply leaves the parties *in pari delicto* in the situation in which they have placed themselves, and will not extend its aid to either party. *Bostick* v. *McClaren*, 2 Brev., 275; *Harvin* v. *Weeks*, 11 Rich., at p. 608.   Besides all this, no such question was made before the Circuit Judge nor was it presented by any of the exceptions, and hence is not properly before this Court.

It seems to me, therefore, that the judgment of the Circuit Court should be affirmed.