## Cartmell et al. v. City of Maysville et al.

(Decided November 26, 1929.)

JOHN P. McCARTNEY for appellants.

B. S. GRANNIS for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Affirming.

This action was brought by the city of Maysville, the E. A. Robertson Cigar Company, the State National Bank of Maysville, and McClanahan & Shea, against Charlotta Cartmell and Elizabeth Cartmell, to require them by mandatory injunction to remove from Patton alley four concrete pillars they had placed in the alley. On final hearing the circuit court denied the city of Maysville relief by injunction, but granted the injunction as prayed by the other plaintiffs, who are the owners of lots adjoining the alley. The defendants appeal.

The alley in question runs south from Front street to Second street 323 feet. The defendants' house extends over the entire width of the alley, resting on a wall on either side of it. Their property is thus described in the deed under which they hold:

Lying and being in the City of Maysville, Mason County, Kentucky, fronting on Front Street between Patton Alley and Sutton Street 20½ feet, including in said width an alley running through it from Second to Front Street, which is to be kept open and extending back southwardly, the same width, including the alley which is to be kept open, 117 feet, then westwardly at right angles from said alley far enough to make a lot 22 feet, exclusive of the alley and parallel with the alley 74 feet to the back line of the lot belonging to Mrs. Mannen's children (now McClanahan & Shea), the ground on Front Street includes the balance of the stone front house adjoining and connected with the stone front house of Newton Cooper (now W. W. Ball) over the alley and down Front Street 20½ feet from W. W. Ball line to include all of said stone front house not heretofore owned by Cooper, and half the wall of the adjoining house (now torn away), together with all the right and privileges in and over said alley as connected with said lot and build-

ing. The lot and alley will more fully appear by the following diagram which is made a part hereof, to-wit:

There is no evidence in the record how the alley was established or by whom. In the last few years a warehouse has been put on the alley on one side by one of the appellees and on the other side by another of the appellees, and heavy trucks are run to these warehouses. The posts, to protect the walls, were knocked down or pulled out, and appellants, to protect their walls, built concrete pillars at the front and rear of their house on either side of the alley, extending out from the wall something over 2 feet and leaving a walkway in the center about 3 feet wide. These pillars are the obstructions in controversy. The alley is 8 feet wide from wall to wall. At the time the proof was taken there were 5 posts on the east and 3 on the west side of the alley. One post was 10½ inches thick, one 8 inches thick, and the others were 5 inches thick. The width of the alley at Front street at the arch was 7 feet 8 inches. At the National Bank Building, at the south end of the alley, it was 9 feet 8 inches, and part of the way 9 feet 3 inches or 8 feet 9 inches. A large post 12 inches in diameter had been planted in the alley at the garage of the telephone company, which was rented from the National Bank. The alley was paved with cobblestones and was lower in the center than on either side, but who paved it does not appear. The proof shows that if the pillars remain in the alley the trucks and other like vehicles have to back out at the other end. While there is some proof that certain vehicles may turn in the garage, other vehicles have no adequate way of getting out; as things now stand they have to back out. The case presents these questions:

(1) Is the proof sufficient to establish a prescriptive right in appellees to the use of the alley?

(2) If they have a right to use it, can they use it for only such vehicles as were in use when the alley was

established, and not for such as are now in use, which break into appellant's sewer and injure the foundation of their house?

(3) Did the court go too far in requiring the obstructions to be removed from the alley?

The alley has been open as far back as any of the citizens remember. It used to be just a rock alley—just loose rock on top. Then there was a pathway put down in the center of it with flat rock. As far back as any of the witnesses remember, the alley has been used by the general public, without permission from any one. The alley was open in 1864; people went through it without objection. Before 1875 there was a gate at one end and a billboard at the other end of the alley. After these were removed the posts were put in. The posts had been in the alley for years. The alley was too narrow for a farm wagon to drive through, but it was used by other vehicles. Originally there was an alley running out from this alley at right angles at the point A to Sutton street. But this alley McClanahan & Shea had closed up.

1. The proof is clear that for over 30 years the alley has been open and that any one who wished went through it. It was no less used by vehicles than by foot passengers. Under the well-settled rule, such long use of the alley raises a presumption of grant or that such use of the alley was rightful. Appellants cannot maintain otherwise, for their deed expressly provides that the alley is to be kept open. The fair construction of the deed is, not that the alley is to be kept open 117 feet, but that the alley is to be kept open and that their lot runs back 117 feet—20½ feet wide, including the alley. They cannot maintain that the public have not the right to have the alley kept open.

2. Though the alley may be used now by vehicles heavier than those in use 50 years ago, appellants cannot complain. The public has the right to use the alley and the weight of the vehicles may change from time to time. The right of the public to use the alley was not confined to vehicles of a certain weight.

3. The court by its judgment adjudged that appellants should at once remove from the alley "the concrete pillars or abutments now therein." These words were added: "And that they be finally and permanently restrained and enjoined from placing these or other obstructions in said alley and thus interfere with the travel through said alley." The concrete pillars were properly

ordered removed, as they only left a space open in the center of the alley a little less than 3 feet wide. The other clause of the judgment only refers to what appellants shall not do in the future. That is, they are enjoined "from placing these or other obstructions in said alley, and thus interfering with the travel through said alley." This part of the judgment has no reference to the posts heretofore placed in the alley. The court did not require the posts removed. The effect of the judgment is only that they must not in the future place other obstructions in the alley interfering with the travel through it. Whether they have the prescriptive right to maintain the posts is a question not presented by the record and not decided by the court. The judgment only requires the concrete pillars to be removed, and in effect only forbids future obstructions in the alley interfering with the travel therein. It has no reference to posts in the alley when the action was brought and when the judgment was rendered.

The evidence does not show that the alley which McClanahan & Shea closed was legally established or that it was improperly closed by them.

It is well settled that property owners on a public way may maintain an action to open the way when by the closing of one end thereof their property is placed in a cul-de-sac, 13 R. C. L. p. 231, sec. 240; 44 C. J. p. 966, sec. 3757. The city of Maysville does not appeal from the judgment.

Persons driving through Patton alley have no right to run against appellant's walls and injure them, and if they do this appellants have their remedy as in other cases.

Judgment affirmed.