**CITY OF EL PASO v. SANDFELDER.**

No. 3694.

Court of Civil Appeals of Texas. El Paso.

June 30, 1938.

Rehearing Denied July 14, 1938.

Ernest Guinn, City Atty., and Coyne Milstead, Asst. City Atty., both of El Paso, for appellant.

Jones, Turney, Hardie, Grambling & Howell, of El Paso, for appellee.

NEALON, Chief Justice.

Appellee, as assignee of George Reeder, hereinafter styled plaintiff, sued appellant and Southern Pacific Company for alleged damages to land which she claimed resulted from the acts of defendants in closing and obstructing a railroad crossing on Dyer Street in the City of El Paso. Dyer Street was for many years a thoroughfare in the City of El Paso, extending from a point a considerable distance southerly from the lots belonging to appellee's assignor and described as Lots 1, 2, 3 and 4, in Block 93, of Grandview Addition to the City of El Paso past said lots and across the tracks of the Southern Pacific Company in a northerly direction to the city limits, where it became a highway connecting the City with

the New Mexico boundary and points within that State. Reeder's lots abutted upon Dyer Street and faced easterly. They were purchased by George Reeder in 1923, were thereafter conveyed by him to J. W. Jones, and later re-acquired by Reeder from Jones. He lost them at a foreclosure sale, appellee becoming the purchaser. June 15, 1933 appellee re-conveyed the lots to Reeder. The Southern Pacific Company and its predecessors in title acquired their title to the property upon which the tracks were laid in 1879. Reeder and the Railroad Company did not deraign their titles from a common source.

The record does not disclose when the public began to use Dyer Street crossing over the railroad tracks. However, it does disclose that the County Commissioners laid out the road of which Dyer Street is a part a considerable time before Dyer Street was taken into the City. On' or about the 30th of April, 1936, the City, which is a Home Rule City, possessing power to vacate and close streets, in order to eliminate the grade crossing at Dyer Street and thereby eliminate a traffic hazard, entered into a contract for the construction of an underpass a short distance east of Dyer Street and abandoned the street over the railroad crossing. The plans and specifications approved by the City required the elimination of said grade crossing and the digging of ditches across Dyer Street. The digging of the ditches and the excavations made by the contractor in accordance with the terms, plans and specifications approved by the City, together with barricades erected by the Southern Pacific Company at the instance of the City, proved an effective barrier to travel across the railroad upon Dyer Street. It is this obstruction that appellee complains of, and which she charges to be the cause of damage to her assignor. The excavations and obstructions are permanent in character and intended by both the City and the Railroad Company to be permanent. The City, by contract duly authorized by ordinance, agreed with the owners of the railroad that all damages in any way incident to and connected with the installation, construction, existence, use and maintenance of the project should be paid and adjusted solely by the City, and agreed to hold the Railroad Company, as well as the State of Texas, harmless against claims of this character.

In response to special issues the jury found that the market value of plaintiff's property was reduced by the obstruction to Dyer Street complained of by plaintiff in the amount of $3,500, and that the damage was permanent. It further found that Reeder, at the time Dyer Street was obstructed, had a private easement in the obstructed portion of Dyer Street. The court defined a private easement as "the right acquired by the abutting owner upon such street for use of such street for purposes of ingress and egress to his property over and above the right of the public generally." It is undisputed that the obstruction did not block ingress to or egress from Reeder's property, and was not in the same block within which said property is situated. A short distance southerly from his property between it and the railroad lies Memphis Street which affords ingress and egress. Appellee's claim is based solely upon the alleged diversion of travel resulting from the obstruction of the crossing.

Upon the answers returned by the jury the court entered judgment in favor of plaintiff and against the City of El Paso for the sum of $3,500, overruling the City's motion to render judgment in its favor notwithstanding the verdict. From this judgment the City has appealed.

### Opinion.

There is no evidence to sustain the jury's finding that Reeder at the time Dyer Street was obstructed had a private easement in the portion of that street so obstructed. The first deed to Reeder was made by Max Moye in 1923 and called for Lots 1, 2, 3 and 4, in Block 93 of Grandview Addition to the City of El Paso, Texas. The same description with the added words, "As said lots and blocks are shown on the official map of said Addition of record in the office of the County Clerk of El Paso County, Texas," appear in Reeder's deed to Jones. The reconveyance from Jones and wife to Reeder executed in 1930 called merely for the lots, block and addition. The deed from appellee to Reeder executed in 1933 called for the lots and block "according to the map and plat of said addition on file in the office of the County Clerk of El Paso County." The map of the addition prepared and filed by the Grandview Realty Company, when it platted the addition and placed it upon the market, did not show Dyer Street as crossing the railroad. It was subsequent to this time that the Grandview Realty Company conveyed to the County a portion of the addition ly-

ing between Memphis Street and the crossing here involved, and the Commissioners' Court authorized the County engineer to construct the road over the crossing and to certain points beyond it. It will be readily seen that Reeder's vendors thus acquired only such rights in the crossing as inured to the general public by reason of the opening of the thoroughfare. They acquired no private easement.

■■ The right of the City to vacate and abandon streets is not questioned. It is admitted. Nor are damages sought because of the City's action in this respect. The action is predicated upon the assumption that some right of Reeder was violated when the City and the Railroad Company constructed barriers to further travel across the railroad at the point where the crossing had existed. But what right? If it was lawful for the City to abandon the crossing, as is admitted, the right of possession upon abandonment reverted to the owner of the fee—the Railroad Company. The owner of the fee had the right to enclose its property and prevent its use by the general public—the City Council, the representative of the public in the matter, having surrendered the right to further use of the railroad property at that point as a street. While perhaps such action by diverting travel might affect the value of Reeder's property it was a lawful action, lawfully performed. The entire proceeding was carried through by the City Council because deemed necessary in the interest of public safety; and not to promote private ends. That life might not be imperiled by the use of the Dyer Street crossing it was eliminated and barriers to its further use as a street were constructed. This was a proper exercise of the police power. Being a lawful proceeding in pursuance of a legal right it could not be an actionable wrong. It was not a "taking" of Reeder's property, nor was it a damaging thereof within the meaning of Article 1, Sec. 17 of the Texas Constitution, Vernon's Ann.St.Const. art. 1, § 17. These views are in harmony with the opinion of the Commission of Appeals (adopted by the Supreme Court) in Lee v. City of Stratford, 125 Tex. 179, 81 S.W.2d 1003 and authorities therein cited; which quotes approvingly the following from Vol. 4, page 279, Sec. 1527 of McQuillen on Municipal Corporations:

"On the other hand, if the street directly in front of one's property is not vacated but the portion vacated is in another block, so that he may use an intersecting cross street, although perhaps it is not quite so short a way nor as convenient, it is almost universally held that he does not suffer such a special injury as entitles him to damages. And this is so notwithstanding the new route is less convenient or the diversion of travel depreciates the value of his property. The fact that the lot owner may be inconvenienced or that he may have to go a more roundabout way to reach certain points, it is generally held, does not bring him an injury different in kind from the general public, but in degree only. 'If means of ingress and egress are not cut off or lessened in the block of the abutting owner, but only rendered less convenient because of being less direct to other points in the city, and made so by the vacation of the street in another block, such consequence is damnum absque injuria.'" (page 1004.)

Appellee insists that under the principles enunciated in Powell v. Houston & T. C. Ry. Co., 104 Tex. 219, 135 S.W. 1153, 46 L.R.A.,N.S., 615, she is entitled to recover. There are vital differences between that case and this. In the Powell Case the governing body of the City had never abandoned the street which the Railroad Company obstructed. The raising of the grade was in the interest of a private corporation and to further private interests. A right to the unimpaired use of the street still existed in Powell. The Railroad Company's action interfered with the complete exercise of that right and occasioned special damage to Powell's property. Here no right to use the crossing as a street remained in existence to be transgressed. The right to use the crossing as a highway had been abandoned by the only authority that could act for the public in the premises.

Various questions have been raised, but what we have said disposes of the entire controversy.

The judgment of the District Court is reversed and judgment is here rendered in favor of appellant.

Reversed and rendered.

### On Rehearing.

Appellee excepts to the expression we used in distinguishing the Powell Case to the effect that "the raising of the grade was in the interest of a private corpora-

tion and to further private interests." The statement was, perhaps, inexact, and is withdrawn, insofar as it refers to the purpose of the change. It is too well settled to admit of debate that property necessarily devoted to the performance of a railroad's duty as a common carrier is devoted to a public use. The point that impressed us was that Powell and the public had a right to use the crossing and the railroad company made impossible the enjoyment of that right for several months. It is not without significance that the Supreme Court was careful to add to the statement made by the Court of Civil Appeals the further statement that plaintiff alleged "the work was prolonged an unreasonable time, beyond what was necessary to do it, during which time the crossing was impassable, which caused damage to his business." (135 S.W. page 1155.) The plat shown in the opinion of the Court of Civil Appeals (125 S.W. 330) discloses, also, that the obstruction was at the west end of the block in which Powell's property was situated and thus completely obstructed travel from and to that direction, his property being placed temporarily in a cul de sac. In the text of Corpus Juris (Vol. 20, p. 702) it is said that, "if access is cut off in one direction by the closing of the street anywhere between such lot and the next intervening street, leaving the lot in a cul de sac, compensation must be made," citing cases from ten different states. Practically such a situation was present in the Powell Case. It is not present here. Upon the contrary, Memphis Street, upon which Reeder's property corners and which his new construction faces, was left undisturbed. It runs westerly and affords an avenue for travel "to the town," while there is no obstruction to the north, and Reeder's camp is visible from the junction point between the old Dyer Street and the new street that leads to the underpass.

An examination of the authorities cited by the Supreme Court in the Powell Case confirms us in our view that the Court did not intend to declare that liability would be incurred by either the Railroad Company or the City upon facts comparable to those here present. Six cases are cited in support of the Court's judgment in the cited case. We shall briefly refer to the controlling facts in these cases. Rigney v. Chicago, 102 Ill. 64, presented a case in which the construction of a viaduct on Hallsted Street in the City of Chicago cut off all communication by way of the street upon which plaintiff's property was located, except by means of a pair of stairs at the intersection of Hallsted Street and Kinsey Street upon which plaintiff's property was situated, thus placing the property in a cul de sac as to vehicular traffic. In Coker v. Atlanta, K. & N. Ry. Co., 123 Ga. 483, 51 S.E. 481, the Supreme Court of Georgia held that the City Charter of Atlanta did not clothe that city with power to vacate a public thoroughfare, and that injunction would lie. In Dantzer v. Indianapolis Union Ry. Co., 141 Ind. 604, 39 N.E. 223, 34 L.R.A. 769, 50 Am.St.Rep. 343, the Supreme Court of Indiana affirmed a judgment of the Circuit Court denying a recovery to a property owner who sued the Railroad Company for damages alleged to have been sustained by reason of buildings erected so near his premises as to cut off certain approaches thereto, holding that an obstruction in a public street which merely compels the use of a more circuitous route to reach abutting property or renders access thereto inconvenient does not give the property owner a right of action. In Cooper v. Dallas, 83 Tex. 239, 242, 18 S.W. 565, 29 Am.St.Rep. 645, the Court held that there was a direct injury to the land of the plaintiff which was adjacent to certain streets the grades of which were raised, thereby causing waters gathered on certain streets to be concentrated on a place just east of that plaintiff owned and discharged upon his premises. In Gainesville, H. & W. Ry. Co. v. Hall, 78 Tex. 169, 175, 14 S.W. 259, 9 L.R.A. 298, 22 Am.St.Rep. 42, there was presented a case in which there was direct injury to the property of the plaintiff by reason of the vibration, noise, smoke, noxious vapors and cinders incident to the running of trains over the road of defendant which had been constructed parallel to plaintiff's property and at a distance from it of about 39 feet, the court holding that under common law principles a nuisance may be created by smoke, noise, noxious vapors and other physical disturbances of the enjoyment of property. None of these cases when considered in connection with the facts involved furnish authority, persuasive or otherwise, for an affirmance of the judgment rendered in this case.

The motion for rehearing is overruled.